**STATE of Missouri, ex rel. ST. JOSEPH SCHOOL DISTRICT, Appellant,**

v.

**MISSOURI DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION; and W.B. and J.B. on behalf of T.B., Respondents.**

**No. WD 70847.**

Missouri Court of Appeals, Western District.

March 30, 2010.

Linda J. Salfrank, Esq., William J. Hatley, Esq., and Kristina V. Giddens, Esq., Kansas City, MO, for appellant.

Glen D. Webb, Esq., Jefferson City, MO and Stephen O. Walker, Esq., Saratoga, Springs, UT, for respondent.

Before: LISA WHITE HARDWICK, P.J., and JAMES M. SMART, JR. and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

W.B. and J.B. (collectively "Parents") asserted a claim under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (the "IDEA" or "Act"), contending that the St. Joseph School District was denying their son the special education services to which he was entitled under the Act. The School District claimed that Parents entered into a settlement agreement that resolved their claims during informal negotiations, and prior to their scheduled due process hearing before an administrative hearing panel appointed by Respondent Missouri Department of Elementary and Secondary Education. The School District filed a Motion for Enforcement of Settlement Agreement, which the Panel overruled on the basis that it lacked authority to consider the motion. The School District then filed this action in the circuit court, seeking a writ of mandamus ordering the Panel to decide on the merits its motion to enforce the purported settlement. The circuit court denied relief, and the School District appeals. We reverse.

### Factual Background

On March 28, 2007, Parents filed an IDEA claim against the School District with the Department, alleging that the School District failed to provide T.B. (who has a disability which qualifies him for special educational services) with a free and appropriate public education.[1] Both Parents and the School District waived the opportunity to resolve their dispute through mediation or an informal resolution session, and the case was accordingly scheduled for a due process hearing on November 5, 2007.

Prior to the scheduled due process hearing, the parties engaged in informal settlement negotiations. In light of the ongoing negotiations, the parties agreed to continue the scheduled due process hearing before the Panel.

The parties dispute whether their negotiations resulted in a binding settlement agreement. The School District contends that the parties reached a complete and binding settlement on November 1, 2007, and that Parents' counsel notified the Panel's chair on the same day that an agreement had been reached. According to the School District, Parents thereafter sought to change the terms of the agreement. The School District refused to agree to the altered terms. Instead, in January 2008, the School District filed with the Panel its

---

1. Missouri law "require[s] public schools to provide to all handicapped and severely handicapped children … a free appropriate education consistent with the provisions set forth in state and federal regulations implementing the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. Section 1400 et seq. and any amendments thereto." § 162.670.

All citations are to the RSMo 2000 updated through the 2009 Cumulative Supplement, unless otherwise indicated. While § 162.961 was amended in 2009, none of the amendments are relevant to the instant dispute.

Motion to Enforce the Parties' Settlement Agreement, or in the alternative, To Dismiss Petitioners' Due Process Request. In response, the Panel issued a "letter order" on March 6, 2008, which denied the School District's motion. In doing so, the Panel's chairperson [2] explained:

> Having done all the research I know to do, I have yet to find something to hang my hat on to enforce the settlement almost reached in this case. Therefore, you may consider this a letter ruling that the Motion for Enforcement of the parties' settlement agreement is overruled.

On April 8, 2008, the School District filed in the circuit court its two-count Petition For Preliminary and Permanent Writ of Mandamus or, in the alternative, for a Declaratory Judgment. Count One sought a writ of mandamus directing the Department (acting through the appointed Panel) to rule on the School District's motion to enforce the settlement agreement. Alternatively, Count Two requested that, if the circuit court found that the Panel did not have authority to rule on the School District's motion, the court itself enter a declaratory judgment finding that a valid settlement agreement existed, and directing the parties to comply with its terms.

 Parents and the Department filed separate motions to dismiss, and on March 17, 2009, the circuit court issued its amended judgment dismissing the School District's Petition. The School District now appeals.[3]

## Standard of Review

 We review a circuit court's dismissal of a petition for failure to state a claim de novo. State ex rel. Chastain v. City of Kansas City, 289 S.W.3d 759, 763 (Mo.App. W.D.2009); Crocker v. Crocker, 261 S.W.3d 724, 726 (Mo.App. W.D.2008). Similarly, in an appeal of a trial court's denial of an extraordinary writ, we review questions of law, including questions of statutory interpretation, de novo. Maxwell v. Daviess County, 190 S.W.3d 606, 610 (Mo.App. W.D.2006).[4]

---

**2.** The relevant orders were issued by the Panel's chairperson. Because none of the parties argues that the Panel's chairperson was unauthorized to act on the Panel's behalf with respect to the matters at issue, we generally refer to "the Panel" in this opinion.

**3.** We recognize that typically, "[w]hen a circuit court denies a preliminary writ of mandamus, appeal is not proper; instead, the petitioner must file the writ in a higher court." Delay v. Mo. Bd. of Prob. & Parole, 174 S.W.3d 662, 664 (Mo.App. W.D.2005). "However, in cases in which the court below dismisses the petition following answer or motion directed to the merits of the controversy and in doing so determines a question of fact or law, this court treats the order denying mandamus relief as final and appealable." Id. (citations and internal quotation marks omitted); see also Wheat v. Mo. Bd. of Prob. & Parole, 932 S.W.2d 835, 838 (Mo.App. W.D.1996) (where trial court's action goes "beyond mere discretionary refusal to entertain the writ," appellate jurisdiction exists).

Here, the circuit court's amended judgment addressed the merits by concluding, inter alia, that the Panel actually considered and rejected the School District's claim that a binding settlement was in fact reached. This appeal is accordingly proper.

**4.** In arguing for more deferential review, the Department cites Wheat v. Mo. Bd. of Prob. & Parole, 932 S.W.2d 835, 838 (Mo.App. W.D. 1996). But in Wheat, "the trial judge made findings of fact and conclusions of law addressing and resolving substantive arguments in Mr. Wheat's [writ] petition," after receiving evidence beyond the petition and its attachments. Id. (emphasis added). Here, the circuit court ruled on a motion to dismiss. Moreover, while the parties may have referenced facts beyond those alleged in the School District's Petition or submitted additional materials to the court, the trial court's ruling is based on its interpretation of the Petition and the attachments thereto, and did not purport to find facts. Our review is accordingly de novo.

## Analysis

In Point One, the School District argues that the Panel "erred in dismissing [its] Petition for a Writ of Mandamus ... because [the Panel] had a mandatory duty to rule on the merits of [the School District's] motion to enforce the settlement agreement."

■■■ As we have recently explained: The remedy of a writ of mandamus is only appropriate where a party has a clear duty to perform a certain act. Mandamus only lies when there is an unequivocal showing that a public official failed to perform a ministerial duty imposed by law. The purpose of mandamus is to require the performance of a duty already defined by the law. Thus, mandamus enforces existing rights, but may not be used to establish new rights. Whether a petitioner's right to mandamus is clearly established and presently existing is determined by examining the statute or ordinance under which petitioner claims the right. Therefore, in order to prevail, [the School District] must demonstrate that the [Department] had a clear duty existing under the current law to [rule on the issue in question].

*State ex rel. Lee v. City of Grain Valley,* 293 S.W.3d 104, 106–07 (Mo.App. W.D. 2009) (citations and internal quotation marks omitted). Specifically, mandamus is available where a court or administrative agency refuses to exercise the authority it possesses to decide a particular matter:

Mandamus will issue from this Court to a circuit court where the latter refuses to act in response to a matter within its jurisdiction when it is its duty to act, that is, when its refusal is, in effect, a failure to perform a duty within its jurisdiction. Said another way, where a circuit court, having obtained jurisdiction, refuses to proceed in the exercise thereof to a determination on the merits, and there is no adequate remedy by appeal, it may be compelled to do so by mandamus.

*State ex rel. Stewart v. McGuire,* 838 S.W.2d 516, 518 (Mo.App. S.D.1992) (citation omitted) (issuing writ of mandamus where trial court stated that it "declines to take any action with respect to" pending motions to confirm or vacate an arbitration award).

■■■ Missouri has enacted various statutory provisions to implement the IDEA in Missouri schools "in order to obtain federal grants to assist in educating disabled children." *Neosho R–V School District v. McGee,* 979 S.W.2d 537, 538 (Mo.App. S.D. 1998). Section 162.961.1, in particular, provides a mechanism to obtain a hearing on any dispute between a student's representatives and an educational provider concerning the student's rights under the Act. It states in relevant part that:

A parent, guardian or the responsible educational agency may request a due process hearing by the state board of education with respect to *any matter relating to* identification, evaluation, educational placement, or *the provision of a free appropriate public education of the child.*

*Id.* (emphasis added). The statute further provides that, "[a]fter review of all evidence presented and a proper deliberation, the hearing panel ... shall by majority vote determine its findings, conclusions, and decision in the matter in question." § 162.961.3. A circuit court cannot address issues subject to administrative resolution under § 162.961.1 unless those issues have first been presented to, and decided by, a due process hearing panel. *Neosho,* 979 S.W.2d at 540; *see also* § 162.962 (specifying procedures for judicial review of decisions of special education hearing panels).

Here, the parties dispute whether the School District and Parents entered into a binding settlement agreement resolving Parents' claim that their son was not receiving the educational services to which he was statutorily entitled. If enforced, the terms of the purported settlement would govern the special education services Parents' son will receive from the School District. Giving § 162.961.1 its plain and ordinary meaning, the parties' dispute as to the existence and enforcement of the settlement would thus appear to be a "matter relating to ... the provision of a free appropriate public education of the child," subject to resolution by a hearing panel constituted by the Department.

Our reading of the text of § 162.961.1 is confirmed by *Neosho,* 979 S.W.2d 537. In *Neosho,* the McGees brought an IDEA claim against their child's school district; however, prior to the due process hearing the parties allegedly reached a settlement in principle, and the hearing was therefore continued. *Id.* at 538–39. After efforts to finalize the settlement reached an impasse, the school district filed an action in the circuit court to enforce the final settlement agreement it contended the parties had reached. The circuit court "found 'the existence of a valid and binding settlement agreement' and entered judgment ordering that the 'Motion to Enforce Settlement Agreement is sustained.' " *Id.* at 538.

*Neosho* held that the trial court's finding that a settlement agreement had been reached, and its order that the parties comply with the agreement's terms, invaded the province of the due process hearing panel to decide, in the first instance, issues concerning a student's right to a free appropriate public education:

The result of [enforcing the alleged settlement agreement] was determination by the trial court of the claim that the district violated Jesse McGee's right to a free public education. This occurred without a review of the district's actions by a due process review panel as provided by § 162.961.[1],[5] although such a review was requested by Jesse's parents.

. . . .

The fact that the district attempted to structure the action in the trial court as an action for injunctive relief for enforcement of an alleged agreement between the parties does not alter the result of this appeal. The trial court's authority with respect to deciding the subject matter of the alleged agreement was limited by § 192.962 to a review pursuant to chapter 536.

*Id.* at 539–40. Even though the school district was seeking to enforce a voluntary settlement agreement, the Southern District held that "the [school] district did not exhaust all administrative remedies [because i]t did not secure a determination by the panel as prescribed by § 162.961.[1]". *Id.* at 540.

*Neosho* held that an administrative hearing panel is the proper body to determine whether a binding settlement agreement exists, and whether either party has failed to comply with it. By stating that the trial court's authority concerning "the subject matter of the alleged agreement" was limited to judicial review of a due process hearing panel's decision, *id.,* *Neosho* recognized that deciding whether an IDEA settlement agreement exists, its terms, and whether the parties have complied with such an agreement, necessarily

5. At the time *Neosho* was decided, the relevant section of the statute was numbered

§ 162.961.3.

determines the "free appropriate public education" a child will receive; if enforceable, a settlement will constitute a full and final resolution of an IDEA claim. In concluding that administrative remedies existed for the school district's breach-of-settlement-agreement claim, but that the school district had failed to exhaust those remedies, the Southern District necessarily held that such settlement-related disputes constitute "matter[s] relating to . . . the provision of a free appropriate public education of the child," and thus fall within the jurisdiction of due process hearing panels under § 162.961.1.[6]

Federal caselaw also supports the conclusion that the Panel had the statutory authority, and duty, to decide whether a settlement agreement existed. The language of § 162.961.1 is patterned after 20 U.S.C. § 1415(b)(6)(A), which specifies that a party may file a complaint, and obtain a due process hearing, "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Under this closely similar language, federal courts have consistently held that administrative hearing panels—not courts—must decide in the first instance whether enforceable settlement agreements exist, and have been complied with, because disputes concerning such settlement agreements "relat[e] to . . . the provision of a free appropriate public education to [a] child":

> [C]onsistent with the unambiguous statutory language, which provides that a parent may bring an administrative due process hearing challenging "*any* matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child," 20 U.S.C. § 1415(b)(6) (emphasis added), we have interpreted the IDEA's exhaustion requirement as applying to a "broad" spectrum of claims. . . . Applying this principle, we conclude that a parent's claim that a school board breached the provisions of a settlement agreement that had resulted from an IDEA due process hearing is also primarily a challenge relating to the provision of a FAPE and must be addressed administratively.

*Sch. Bd. of Lee County v. M.M. ex rel. M.M. II,* 348 Fed.Appx. 504, 511 (11th Cir.2009) (citations omitted);[7] *see also, e.g., J.P. v. Cherokee County Bd. of Educ.,* 218 Fed.Appx. 911, 913–14 (11th Cir.2007) (holding that because "[t]he instant claims . . . concern whether Defendants' actions in November 2003 violated the IDEA and constituted a breach of the provisions of the settlement agreement[,] . . . plaintiffs were required to exhaust administrative remedies before filing this court action."); *J.M.C. v. La. Bd. Elementary & Secondary Educ.,* 584 F.Supp.2d 894, 897

---

6. The Department argues that *Neosho* is distinguishable, because "[t]he alleged settlement in the *Neosho* case answered the question posed to the hearing panel, i.e., it made a determination that the school district violated the child's right to a free appropriate public education." We find no suggestion in *Neosho* that the settlement agreement at issue there contained an acknowledgment that the child's IDEA rights had been violated (and such an explicit admission of liability would be unusual in any settlement agreement). Rather, when *Neosho* stated that the trial court had effectively "determin[ed] . . . that the district violated Jesse McGee's right to a free public education" by enforcing the settlement, 979 S.W.2d at 539, we believe *Neosho* was simply recognizing that the enforcement of a settlement of an IDEA claim necessarily results in a final determination of a student's rights under the Act.

7. Federal Rule of Appellate Procedure 32.1 provides that unpublished federal appellate decisions issued on or after January 1, 2007, may be cited as authority.

(M.D.La.2008); *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't Dept. of Educ.*, No. 5:06–CV–139, 2007 WL 2219352, at *9–*10 (W.D.Mich. July 27, 2007).[8]

The circuit court itself recognized that "only the Due Process Hearing Chair can rule on a Motion to Enforce a Settlement." It nonetheless denied relief because it concluded that the Panel had in fact addressed the merits of the School District's claim that a settlement existed, and simply held that the School District had failed to demonstrate the existence of a binding, complete agreement. We cannot agree. The Panel's March 6, 2008 "letter order" states that, after researching the question, the Panel was unable to find any basis to enforce the settlement. If there were any doubt that the Panel had refused to address the merits of the School District's motion due to a perceived lack of authority to do so, the Panel's chairperson issued an "Order" on August 20, 2008, after the commencement of this mandamus proceeding, which stated:

> In response to [Parents' counsel's] assertion that I had decided that there

was not a full settlement agreement in place prior to additional discussions and conditions being inserted by his client, he is wrong. I never reached the issue, because I could find no authority for my taking such an action.[9]

On appeal, even the Department concedes that the Panel "overruled the [the School District's] motion to enforce the alleged settlement agreement without reaching the merits as to the existence or non-existence of the alleged agreement."

Because the Panel had "a clear duty to perform a certain act," namely to determine whether an enforceable settlement agreement existed between the parties, we reverse the circuit court's order dismissing the School District's petition for writ of mandamus. In doing so, we emphasize that our disposition merely requires the Panel to address the School District's motion to enforce settlement on its merits; we do not in any way suggest what the outcome of the Panel's consideration should be. *See State ex rel. Fielder v. Kirkwood*, 345 Mo. 1089, 138 S.W.2d 1009, 1011 (1940) ("[W]hen, upon a preliminary

---

8. We recognize that, if the purported settlement had been reached in the course of the formal mediation or resolution sessions established under the federal and state statutes, such an agreement might instead have been directly enforceable in federal or state court. *See* 20 U.S.C. §§ 1415(e)(2)(F)(iii), 1415(f)(1)(B)(iii)(II); §§ 162.959.6, 162.961.7. In this case the parties waived these mediation and resolution sessions, however, and instead allegedly reached a settlement in the context of informal settlement negotiations; we therefore need not address the construction or effect of the cited statutory provisions. If anything, the fact that the IDEA and its state counterpart provide for judicial enforcement of settlements reached *in other circumstances* suggests that the settlement at issue here is *not* directly enforceable in a court, but instead before the Panel. *See Lara v. Lynwood Unified Sch. Dist.*, No. CV08–04616 RGK (FFMx), 2009 WL 2366454, at *2–*3 (C.D.Cal. July 29, 2009); *J.M.C.*, 584

F.Supp.2d at 897–98; *Traverse Bay*, 2007 WL 2219352, at *6–*7; *M.J. v. Clovis Unified Sch. Dist.*, No. 1:05–CV–00927 OWW LJO, 2007 WL 1033444, at *7–*8 (E.D. Cal. April 3, 2007); *Bowman v. Dist. of Columbia*, No. 05–01933(HHK), 2006 WL 2221703, at *2 (D.D.C. Aug.2, 2006).

9. Because the Panel retained jurisdiction of the underlying IDEA dispute despite the filing of this writ proceeding challenging the Panel's interlocutory ruling on the School District's Motion to Enforce, nothing prevented the Panel from issuing further orders clarifying or modifying the challenged ruling. *See, e.g., State ex rel. Jackson County v. Mo. Pub. Serv. Comm'n*, 985 S.W.2d 400 (Mo.App. W.D. 1999) (PSC could issue order granting intervention, and thereby moot appeal, during pendency of writ proceeding challenging its earlier refusal to allow intervention).

question of jurisdiction depending wholly upon the law and not upon the facts, the [agency] misconceives its jurisdiction ... and refuses to proceed to a final determination upon the merits then the appellate court will [direct the trial court] to compel the [agency] to reinstate the matter and proceed to its final determination without attempting to dictate what the result of such determination shall be."); *State ex rel. Stewart v. McGuire,* 838 S.W.2d 516, 519 (Mo.App. S.D.1992) ("[i]t is not the function of mandamus to direct the course of judicial action in a given cause, but instead to compel [the Panel] to proceed with a cause pending before [it]").[10]

## Conclusion

The circuit court's judgment is reversed, and the case remanded to that court with directions to issue a writ of mandamus directing the due process hearing panel appointed by Respondent Missouri Department of Elementary and Secondary Education to decide on its merits the School District's Motion to Enforce the Parties' Settlement Agreement, or in the alternative, To Dismiss Petitioners' Due Process Request.

All concur.

---

**10.** Because this holding is dispositive of the School District's appeal, we need not address

its second, alternative Point Relied On.